UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERESA CAPONIO,

Plaintiff,

v.

BOILERMAKERS LOCAL 549, et al.,

Defendants.

Case No.  16-cv-03919-VC

**ORDER ON MOTIONS TO DISMISS**

Re: Dkt. Nos. 47, 48, 49

Teresa Caponio alleges that Boilermakers Local 549, Boilermakers Western States Joint Apprenticeship Program, and International Brotherhood of Boilermakers denied her the benefits of a joint apprenticeship program because of her sex and age.  She claims that the defendants refused to credit her with class hours or assign her to projects, causing her to advance more slowly through the apprenticeship program than younger, male apprentices.  She also alleges that the defendants retaliated against her when she complained about the discrimination.  Each defendant has filed a separate motion to dismiss all or a part of the complaint.  These motions are granted in part and denied in part.  Caponio's state-law claims are dismissed, while her federal-law claims (Causes of Action 6-10) may go forward.

ERISA Preemption

Caponio's state-law claims are preempted by ERISA.  "[A] state-law cause of action is completely preempted if (1) 'an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B),' and (2) 'where there is no other independent legal duty that is implicated by a defendant's actions.'"  *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).

The first part of the *Davila* test is met in this case. The Boilermakers National Apprenticeship Program is an ERISA plan. Second Am. Compl. at 18. The work and class hours that Caponio contends she was denied are benefits of that plan. Second Am. Compl. ¶¶ 11, 13, 72. Because Caponio is alleging the denial of benefits in an ERISA plan, she could have brought her claim under ERISA § 502(a)(1)(B). Indeed, she has done so elsewhere in the complaint. Second Am. Compl. ¶¶ 123-28. There is no separate agreement under which Caponio alleges she was entitled to any benefits beyond those provided under the apprenticeship agreement. *See Washington v. AT & T Corp.*, No. 10-cv-03751-LB, 2011 WL 233004, at *5 (N.D. Cal. Jan. 24, 2011) ("The fact that Defendant denied Plaintiff's short-term disability to harass, discriminate, and retaliate against him may explain why Defendant denied him the benefits, but it does not change the nature of the claims themselves."); *cf. Marin Gen. Hosp.*, 581 F.3d at 947-48 (finding that the first part of the *Davila* test was not met because the plaintiff's claims were based on an alleged oral contract, not obligations under an ERISA plan).

Caponio argues that she could not have brought her state-law claims under ERISA because she is seeking the remedies provided by California's anti-discrimination and anti-retaliation statutes, not merely the benefits to which she was entitled under the apprenticeship agreement. But a mismatch in remedies or the elements of claims is not sufficient to avoid ERISA complete preemption when the underlying obligation is provision of ERISA benefits. As the Supreme Court observed in *Davila*, "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim." *Davila*, 542 U.S. at 216; *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

The second part of the *Davila* test is also met because the defendants' actions do not implicate an independent legal duty. The defendants were only obligated to provide benefits to Caponio (and not discriminate against her in providing those benefits) because of the apprenticeship program, which is an ERISA plan. *See Washington*, 2011 WL 233004, at *6 (The

plaintiff's discrimination, harassment, and retaliation claims "still implicate AT & T's obligations under the plan. Those obligations would not exist if the plan did not exist."); *cf. Marin Gen. Hosp.*, 581 F.3d at 950 ("Since the state-law claims asserted in this case are in no way based on an obligation under an ERISA plan, and since they would exist whether or not an ERISA plan existed, they are based on 'other independent legal dut[ies]' within the meaning of *Davila*.").

The ERISA complete preemption analysis in this case is similar to that in *Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005). Douglas Cleghorn alleged that Blue Shield's emergency care policy violated California law, and he filed claims under California's Unfair Competition Law and Consumer Legal Remedies Act on behalf of himself and a proposed class. *Id.* at 1224. The Ninth Circuit held that these claims were completely preempted because "[t]he only factual basis for relief pleaded in Cleghorn's complaint is the refusal of Blue Shield to reimburse him for the emergency medical care he received. Any duty or liability that Blue Shield had to reimburse him 'would exist here only because of [Blue Shield's] administration of ERISA-regulated benefit plans.'" *Id.* at 1226 (quoting *Davila*, 542 U.S. at 213). In this case, the defendants only owed Caponio a duty not to discriminate against her in providing ERISA benefits because she was entitled to benefits as an apprentice in the ERISA apprenticeship program.

Caponio raises the concern that ERISA complete preemption in this context "would effectively insulate all apprenticeship programs from the application of state anti-discrimination law." Pl.'s Suppl. Br. at 2 (emphasis omitted). That's not necessarily true; presumably the state may directly enforce its own anti-discrimination laws against apprenticeship programs. In any event, federal anti-discrimination law still applies. Caponio's central allegation is that the defendants discriminated and retaliated against her by denying her ERISA plan benefits. ERISA completely preempts her state law claims.[1] Dismissal is with leave to amend to the extent

---

[1] This ruling applies to the claims against all of the defendants, even though only Western States argued in its motion to dismiss that the state law claims were completely preempted by ERISA. The parties had a full opportunity to brief this issue, particularly in supplemental briefing after the hearing on the motions to dismiss. The ERISA preemption analysis applies in the same way

3

Caponio can, in good faith, allege a state law claim that does not run afoul of the preemption rule articulated in this order.

Integrated Enterprise Liability

Caponio has alleged sufficient facts to support her theory that Local 549, Boilermakers International, and Western States function as an integrated enterprise.[2] The integrated enterprise inquiry considers: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 815 (9th Cir. 2002). "[N]o one of the factors is controlling, nor need all criteria be present" because whether the parties formed an integrated enterprise "ultimately depends on 'all circumstances of the case' and is characterized as an absence of an 'arm's length relationship'" among entities. *NLRB v. Big Bear Supermarkets No. 3*, 640 F.2d 924, 928 (9th Cir. 1980) (quoting *NLRB v. Don Burgess Constr. Corp.*, 596 F.2d 378, 384 (9th Cir. 1979)). Caponio alleges an interrelation of operations among the Boilermakers International, Western States, and Local 549 in administering the apprenticeship program. Second Am. Compl. ¶ 45. She alleges centralized control of labor relations through the National Joint Rules and Standards Committee. *Id.* ¶ 47. She alleges that the defendants have intertwined finances. *Id.* ¶ 55. And she alleges financial control by Boilermakers International of apprenticeship programs and local lodges. *Id.* ¶¶ 54, 57, 60.

---

to the claims against all of the defendants. *See Silverton v. Dep't of Treasury*, 644 F.3d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."). Caponio recognized in her supplemental brief that only Western States had moved to dismiss on this ground but did not identify any reason that her state-law claims might be preempted by ERISA as to one defendant but not preempted as to others. There is no need to duplicate efforts by requiring the parties to revisit this issue in a later motion.

[2] Judicial notice is taken of Exhibits A-D of Boilermakers International's request for judicial notice. Judicial notice of Exhibits E-K is not taken. The complaint does not rely on those documents, and they are not central to Caponio's claims. *See United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Even if it were appropriate to take judicial notice of the existence of these documents, it would not be appropriate to "draw inferences or take notice of facts that might reasonably be disputed" based on the documents. *Corinthian Colls.*, 655 F.3d at 999.

Boilermakers International cites *Frank v. U.S. West, Inc.* for the proposition that no integrated enterprise exists in a circumstance like this. 3 F.3d 1357 (10th Cir. 1993). The Tenth Circuit in *Frank* rejected an integrated enterprise theory between a parent corporation and its subsidiary. The court found that the plaintiffs had "failed to produce the type of evidence routinely used to show interrelated operations." *Id.* at 1363. In particular, the plaintiffs had shown only that members of the subsidiary reported to officers in the parent company and that the parent company provided generalized guidance on labor relations. *Id* at 1362-63. While the parent company owned the subsidiary, the parent company and subsidiary shared no common officers and only one common manager. *Id.* at 1364. Caponio need not present evidence of an integrated enterprise at the pleadings stage. It is sufficient for now that she has alleged a more integrated relationship than that rejected in *Frank* among Boilermakers International, Western States, and Local 549 with respect to the operations of the apprenticeship program.

<u>Exhaustion of Administrative Remedies and Time Bar</u>

Caponio has sufficiently alleged that she began the process of exhausting her administrative remedies for the claims against Western States and Boilermakers International with her first EEOC charge signed April 17, 2014, and that the claims against those defendants are therefore not time barred, even though Caponio did not formally name the international union or regional joint apprenticeship program as respondents in an EEOC charge until July 7, 2015.[3]

Title VII and the Age Discrimination in Employment Act require a plaintiff seeking relief to file a charge with the EEOC before suing and within 300 days of the alleged unlawful conduct. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). The Ninth Circuit has identified exceptions to the requirement of exhaustion of administrative remedies: if (1) "the respondent named in the EEOC charge is a principal or agent of the unnamed party, or if they are 'substantially identical parties[;]'" (2) "the EEOC could have inferred that the unnamed party violated Title VII[;]" or (3) "the unnamed party had notice of the EEOC conciliation efforts and

---

[3] Local 549 does not argue that Caponio has failed to exhaust her administrative remedies against it or that the claims against it are time barred.

participated in the EEOC proceedings[.]" *Sosa v. Hiraoka*, 920 F.2d 1451, 1459-60 (9th Cir. 1990). These exceptions are most often applied when the petitioner filed the initial EEOC charge without representation. *See id.* at 1459. "The administrative charge required by Title VII does not demand procedural exactness. It is sufficient that the EEOC be apprised, in general terms, of the alleged discriminating parties and the alleged discriminatory acts." *Kaplan v. Int'l All. of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975), *abrogated on other grounds by Loughon v. Int'l All. of Theatrical Stage Emps.*, 248 F.3d 931 (9th Cir. 2001).

Failure to exhaust administrative remedies is an affirmative defense. *See Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009). The defendants bear the burden of proving failure to exhaust, and a complaint cannot be dismissed on that basis unless the failure to exhaust administrative remedies is clear from the face of the complaint. *Pennington v. Int'l House of Pancakes, LLC*, No. 15-cv-00949-RCJ-CWH, 2015 WL 8041672, at *3 (D. Nev. Nov. 4, 2015) ("[U]nless Plaintiff's failure to exhaust is clear from the face of her Amended Complaint, the Court must defer this issue until at least the summary judgment stage."); *see Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) ("When an affirmative defense is obvious on the face of a complaint, . . . a defendant can raise that defense in a motion to dismiss.").

Caponio's integrated enterprise allegations support her contention (at least at the pleadings stage) that her claims against Boilermakers International and Western States are not time barred. Beginning with her first charge, filed April 12, 2014, Caponio referenced the "Apprenticeship." Second Am. Compl. Ex. A, at 2. The initial charge, her amended charges, and her current allegations are consistent with the view that the "Apprenticeship" was an integrated enterprise of Local 549, Western States, and Boilermakers International, not just a program of Local 549. On that basis, the EEOC could have inferred that the other defendants were implicated in the alleged discrimination.

Unlike the plaintiff in *Stache v. International Union of Bricklayers*, Caponio alleges that the international union and joint apprenticeship program enabled discrimination against her as

part of an integrated enterprise, not just that they failed to address discrimination. *Compare* 852 F.2d 1231, 1234 (9th Cir. 1988) *with* Second Am. Compl. ¶¶ 33, 38, 76. Her allegations against Boilermakers International, Western States, and Local 549 appear to be "so closely related that a second administrative investigation would be redundant[.]" *Stache*, 852 F.2d at 1234.

Remaining Issues

Because the state law claims for failure to prevent discrimination, retaliation, and aiding and abetting are preempted by ERISA, the parties' dispute about whether they state claims for relief is moot.[4] Similarly, the parties' dispute about LMRA preemption is moot in light of the ruling on ERISA preemption.

Because Caponio has sufficiently alleged an integrated enterprise among the defendants, the duty of fair representation claim is plausibly pleaded against Western States and Boilermakers International. The defendants' statute of limitation and failure to exhaust procedural remedies defenses are not clear from the face of the complaint because they depend on the resolution of fact disputes.

Only equitable relief is available as a remedy for Caponio's fiduciary duty claim under ERISA. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 441-45 (2011). Consistent with Caponio's opposition to the motions to dismiss, this claim will be construed as seeking equitable relief under ERISA section 502(a)(3) and will not be dismissed. *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth in his complaint *claims for relief*, not causes of action, statutes, or legal theories.").

No attorneys' fees or costs will be awarded on these motions. Although the defendants ask for fees and costs, they make no showing of why they are entitled to them.

---

[4] To the extent that the defendants intended to extend their arguments about the FEHA retaliation claim to the parallel claim under Title VII, the motion is denied because Caponio has sufficiently pleaded adverse employment actions, including the oil poured on her windshield and her suspensions from the apprenticeship program. *See* Second Am. Compl. ¶¶ 27, 37, 146; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

**IT IS SO ORDERED.**

Dated: April 25, 2017

VINCE CHHABRIA
United States District Judge